CADILLAC STATE BANK *v.* CADILLAC STAVE & HEADING CO.

CORPORATIONS—AUTHORITY OF AGENTS—LIABILITY ON NOTES—EVIDENCE.

> In an action against a corporation on certain promissory notes, the execution of which it denied, it appeared that the corporate name was affixed to the notes by a rubber stamp, "per" the manager, or "per" a clerk in the company's office; that such manager was the only member of the corporation residing within the State; that the notes were duly entered on the books of the corporation, and listed in its annual statement; that payments were made thereon from corporate funds; and that, for three years previous to their execution, notes similarly executed were discounted at the plaintiff bank, and the proceeds used in the company's business. *Held*, that a verdict was properly directed for plaintiff.

Error to Wexford; Chittenden, J. Submitted October 10, 1901. Decided December 3, 1901.

*Assumpsit* by the Cadillac State Bank against the Cadillac Stave & Heading Company, impleaded with Nathan E. Staples, on certain promissory notes. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*Sawyer & Bishop*, for appellant.

*D. E. McIntyre*, for appellee.

LONG, J. This action is brought on eight promissory notes purporting to be executed by the Cadillac Stave & Heading Company; six of them running to the plaintiff, and the other two purchased by plaintiff as trade paper, and all guaranteed by Nathan E. Staples. One of the last two notes was given to Charles L. Ballard as part purchase price for a sawmill bought by Nathan E. Staples and Charles A. Ridlon for their own use, and the other of the two notes was given to James E. Beckwith to enable him to purchase some land. Neither of these two notes was in any way connected with the corporate business, or of any direct or indirect benefit to the corporation. The note to Ballard was for $250, and the one to Beckwith was for $160. The other six notes were all given to Henry Knowlton, cashier of the plaintiff bank, and, including the first two described, amount to the sum of $5,510. On the last of these notes are indorsements which reduce the total amount claimed on all the notes to $4,579.12, and for which amount the court directed a verdict in favor of plaintiff. Defendant corporation brings error.

The defendant corporation pleaded the general issue, filing an affidavit made by its president, denying the execution of the notes. Defendant Staples did not appear, and his default was duly entered, though he was produced as a witness for the plaintiff during the trial. It appears that the corporate name to all these notes was impressed upon them with a rubber stamp. On three of them the signing of the corporate name was "per N. E. Staples, Manager." On the others the corporate name was stamped on "per Charles J. Staples," a brother of N. E. Staples, who held no official position with the corporation, but who was a clerk in its office.

The defendant corporation was organized under the laws of this State in January, 1894, with only three stockholders, to wit, Job A. Staples, of Elba, N. Y., and his two sons, George K., of Buffalo, N. Y., and the defendant Nathan E. Staples, who alone resided at Cadillac, this

State, where the business of the corporation was carried on. Subsequently portions of the stock were transferred to others by the original owners, but the exact amount so transferred and held by others does not appear. The factory was burned in December, 1899. It also appears that, during all but one year of this time, N. E. Staples was the secretary, treasurer, and general manager of the business of the corporation, and conducted all the Michigan end of the business, with an occasional visit from his father and brother from New York.

.At the inception of the business there was an arrangement made with Tyndall & Jackson, a Buffalo jobbing house dealing in cooperage stock, to take the entire cut of the company, and to furnish a sufficient amount of money to operate the business. This money was furnished monthly; the corporation making a draft upon Tyndall & Jackson, who accepted the same, whereupon the drafts were deposited with the plaintiff bank, and constituted the fund upon which checks were drawn by the corporation to pay operating expenses. These checks were signed with the same stamp with which the corporate name of the corporation was signed to the notes in controversy. These checks were mostly signed by the secretary and treasurer of the corporation, though the custom was not entirely uniform. These acceptances seem to have furnished all the funds used by N. E. Staples in the business of the corporation until the fall of 1897, when it appears he began discounting promissory notes at the plaintiff bank signed by the rubber stamp with which checks and drafts had previously been executed. There was no evidence offered to prove that the other members of the corporation had any knowledge of this practice, or that this fact was ever brought to the attention of the members of the board of directors, or passed upon by them in their official character or otherwise, until the factory had been destroyed by fire, and the notes in controversy were being pressed for payment. After the fire, it appears that the notes in controversy were presented to N. E. and G. K.

Staples. There is some evidence, which is not disputed, that G. K. Staples, who was then vice-president, acknowledged them as valid claims against the corporation; but no evidence was given that the act of the vice-president was authorized by the board of directors, or that the act was ever ratified by it.

It appears, also, that in February, 1900, the annual statement of the resources and liabilities of the corporation was prepared by the secretary, and by him forwarded to Buffalo to the stockholders. It was thereafter returned to the secretary at Cadillac, accompanied by a letter from J. A. Staples, president of the company, saying: "Report accepted. You are authorized to sign George's name and mine. File report at once." This statement was put in evidence by the plaintiff, and showed a detailed statement of the notes held by the plaintiff bank that are in controversy here. The "George" referred to in the letter was George K. Staples, vice-president of the company. It also appears that the notes in controversy were duly entered upon the books of the corporation in the due course of business. The corporation afterwards paid upon this indebtedness to the bank the sum of $1,600. The plaintiff, to prove the authority of N. E. Staples to execute the notes, introduced in evidence, under objection, 46 other notes, executed in like manner to the ones in controversy, and which had been discounted by the plaintiff bank. Thereupon, and without any further proof of the authority of the secretary and manager to execute notes or to borrow money for the corporation, the notes in controversy were introduced in evidence, and the amount due upon them proved to be $4,579.12.

At the close of the testimony, counsel asked the court to direct a verdict for defendant. This was refused, and the court directed a verdict in favor of plaintiff, as before stated. We think there was no error in this. It appears that the whole management of the business was left to the secretary and manager, Nathan E. Staples. For nearly three years he gave notes in the name of the corpora-

tion, and discounted them at the plaintiff bank.   Annual statements were made, and, so far as appears, no fault was found with this management of the business.   In February, 1900, the annual statement for the year was forwarded to Buffalo to the stockholders.   This statement showed the indebtedness to the bank, and was accepted by the president and vice-president without question.   The stockholders, or most of them, lived in Buffalo.   The board of directors was there, also.   There was no one located in Cadillac who could be inquired of as to the general affairs of the company, except Nathan E. Staples.   He was permitted by the president and board of directors to raise money for the corporate business, and for three years, at least, to sign the name of the corporation to notes, and discount them at the plaintiff bank; and this money was put into the business of the corporation.   It was said in *Hirschmann* v. *Railroad Co.*, 97 Mich. 396 (56 N. W. 846):

"The corporation must be deemed to have clothed the agent with authority to do what it has permitted him openly and notoriously to do without rebuke."

In *Olcott* v. *Railroad Co.*, 27 N. Y. 546 (84 Am. Dec. 298), it was said:

"The powers of the agent of a corporation are such as he is allowed by the directors or managers of the corporation to exercise, within the limits of the charter; and the silent acquiescence of the directors or managers may be as effectual to clothe the agent with power as an express letter of attorney."

It was said by this court in *Whitaker* v. *Kilroy*, 70 Mich. 635 (38 N. W. 606):

"We think that persons dealing with such a corporation for work have a right to get their information from the person whom the corporation has put in charge, and cannot be required to go elsewhere, and that contracts so made are valid contracts, when relating to the ordinary concerns of such business.   And, if persons are not sustained in contracting with such superintendents, they can never be safe.   They have no means of knowledge

except inquiry somewhere, and the person put by the corporation in open charge of the business must have power, as to third persons, to represent it."

It was said by this court in the *Hirschmann Case*, *supra:*

"It is well settled that if an agent of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it, for a considerable time,—in other words, if he is held out to the world as having authority in the premises,—the corporation is bound by his acts in the same manner as if the authority were expressly granted."

See, also, *Michigan Slate Co.* v. *Railroad Co.*, 101 Mich. 14 (59 N. W. 646), and cases there cited.

We think the court was not in error in directing the verdict in favor of the plaintiff.

The judgment must be affirmed.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.